UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | | |
|---|---|---|
| ANSELMO RODRIGUEZ, | ) | |
| Plaintiff, | ) | No. CV-11-03083-CI |
| | ) | |
| v. | ) | ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) | |
| Defendant. | ) | |
| | ) | |

BEFORE THE COURT are cross-Motions for Summary Judgment. ECF No. 16, 18. Attorney Thomas A. Bothwell represents Anselmo Rodriguez (Plaintiff); Special Assistant United States Attorney Leisa A. Wolf represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 6. After reviewing the administrative record and briefs filed by the parties, the court **GRANTS** Plaintiff's Motion for Summary Judgment and **DENIES** Defendant's Motion for Summary Judgment.

### JURISDICTION

On March 4, 2008, Plaintiff protectively filed an application for supplemental security income, alleging disability beginning March 20, 2001. Tr. 14; 60-61; 707-11. The Plaintiff also filed an application for period of disability and disability insurance benefits on January 25, 2008, alleging disability beginning March

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 1

20, 2001.  Tr. 14.  The date of last insured was September 30, 2003.
Tr. 14.  At the hearing, Plaintiff amended the alleged onset date to
March 4, 2008.  Tr. 14; 751-55.  In his application for benefits,
Plaintiff reported that he stopped working due to seizures,
diabetes, deafness in his right ear and a disabled arm.  Tr. 75.
Plaintiff's claim was denied initially and on reconsideration, and
he requested a hearing before an administrative law judge (ALJ).
Tr. 703-23.  A hearing was held on January 28, 2009, at which
Vocational Expert Richard Kyo, and Plaintiff, who was represented by
counsel, testified.  Tr. 746-83.  ALJ James W. Sherry presided.  Tr.
746.  The ALJ denied benefits on February 2, 2010.  Tr. 14-28.  The
instant matter is before this court pursuant to 42 U.S.C. § 405(g).

### STATEMENT OF THE CASE

The facts of the case are set forth in detail in the transcript
of proceedings and are briefly summarized here.  At the time of the
hearing, Plaintiff was 50 years old, living alone in a house.  Tr.
756.  He completed the ninth grade.  Tr. 757.  He is able to write
and read when his diabetes is not causing vision problems.  Tr. 757.

Plaintiff worked as an industrial truck operator, and as a
cleaner/industrial.  Tr. 772.  Plaintiff testified that he cannot
work because the medication he takes for his diabetes and seizures
causes side effects.  Tr. 761.  Plaintiff said he gets tired very
easily, his brain does not function well, his eyesight is poor, he
has to frequently urinate, he has chronic headaches, and he has
shoulder pain in his right shoulder.  Tr. 761-63.  Plaintiff also
suffers from depression and anxiety.  Tr. 766.  He said his driver's
license was permanently suspended due to his seizures.  Tr. 762-63.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 2

He is also deaf in one ear. Tr. 766. Plaintiff estimated he retains about 25 percent use of his right arm. Tr. 762. He said he cannot do housework due to his pain and his arm. Tr. 764. Plaintiff also testified that he had a seizure while cooking, and the Fire Department told him he could not cook anymore, because he almost burned down his house. Tr. 762. Plaintiff's mother, who lives next door, does his cooking for him. Tr. 766.

Plaintiff said that he has to elevate his feet and legs daily because they swell. Tr. 769. He spends most days sitting on his couch, watching television and reading books when his vision works properly. Tr. 771.

## ADMINISTRATIVE DECISION

At step one, ALJ Sherry found Plaintiff had not engaged in substantial gainful activity since March 4, 2008, the application date. Tr. 16. At step two, he found Plaintiff had the following severe impairments: generalized seizure disorder; diabetes mellitus; bilateral amblyopia secondary to astigmatism (poor distance vision); right shoulder dislocation; right shoulder subacromial impingement syndrome, status post arthroscopy in February 2009; hypertension; right ear deafness; and cervical degenerative disc disease. Tr. 17. At step three, the ALJ determined Plaintiff's impairments, alone and in combination, did not meet or medically equal one of the listed impairments in 20 C.F.R., Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925 and 416.926). Tr. 18. The ALJ found Plaintiff has the Residual Functional Capacity ("RFC") to perform light work. Tr. 19. Specifically,

> [T]he claimant can lift or carry 20 pounds occasionally and frequently lift or carry 10 pounds. The claimant can

sit for six hours and stand or walk for six hours in an eight-hour workday.  He is unlimited in his ability to push and pull within the lifting restrictions.  He should not climb ladders, ropes, or scaffolds.  He can occasionally climb ladders, ropes and stairs.[1]  He can frequent[ly] balance and crouch, and he can occasionally stoop, kneel and crawl.  He can frequently reach in all directions, including overhead, with the right dominant upper extremity.  He should avoid concentrated exposure to excessive noise; irritants such as fumes, odors, dusts, gases and poorly ventilated areas; and hazardous machinery and unprotected heights.   He should be limited to occupations requiring occasional far acuity and field of vision.

Tr. 19.

In his step four findings, the ALJ found Plaintiff's statements regarding pain and limitations were not credible to the extent they were inconsistent with the RFC findings.  Tr. 20.  The ALJ found that Plaintiff was able to perform past relevant work as an industrial cleaner.  Tr. 26.  Alternatively, the ALJ found after considering Plaintiff's age, education, work experience, and residual functional capacity, jobs exist in significant numbers in the national economy that the Plaintiff can perform, such as fast food worker, cannery worker, and cafeteria attendant.  Tr. 27.

**STANDARD OF REVIEW**

In *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), the court set out the standard of review:

---

[1]In the hypothetical posed to the vocational expert, the ALJ stated Plaintiff's limitations in part as "no climbing of ladders, ropes or scaffolds; only occasional climbing of ramps or stairs." Tr. 773.  The prohibition on climbing ladders, ropes and scaffolds is supported by Dr. Staley's Physical Residual Functional Capacity Assessment.  Tr. 335.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 4

A district court's order upholding the Commissioner's denial of benefits is reviewed *de novo*. *Harman v. Apfel*, 211 F.3d 1172, 1174 (9th Cir. 2000). The decision of the Commissioner may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id.* at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, although deference is owed to a reasonable construction of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).

It is the role of the trier of fact, not this court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400. If evidence supports more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988). If substantial evidence exists to support the administrative findings, or if conflicting evidence exists that will support a finding of either disability or non-disability, the Commissioner's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 5

**SEQUENTIAL PROCESS**

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-99. This burden is met once a claimant establishes that a physical or mental impairment prevents him from engaging in his previous occupation. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If a claimant cannot do his past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work; and (2) specific jobs exist in the national economy which claimant can perform. *Batson v. Commissioner of Social Sec. Admin.,* 359 F.3d 1190, 1193-94 (2004). If a claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. §§ 404.1520(a)(4)(I-v), 416.920(a)(4)(I-v).

**ISSUES**

Plaintiff alleges that the ALJ erred by (1) failing to designate Plaintiff's anxiety and severe depression as severe impairments; (2) failing to find Plaintiff met Listings 2.02 and 11.02; (3) finding he could perform his past work as an industrial cleaner; (4) relying upon the vocational expert's testimony because the hypothetical was incomplete; (5) giving little weight to the opinions of Plaintiff's treating physician Martin Dubek, M.D.; and (6) finding Plaintiff's testimony was not credible. ECF No. 17, at

12-20.

**ANALYSIS**

**A.   Step Two**

Plaintiff complains that the ALJ erred by rejecting Plaintiff's mental impairments of severe depression and anxiety at step two. ECF No. 17, at 12-13.   In support of his argument that these were severe impairments, Plaintiff points to evaluations by Messrs. Gunn and Chavez evaluation, both of whom found Plaintiff had marked limitations in his ability to work and in essential job functions. ECF No. 17, at 13.   The ALJ concluded that Plaintiff's medically determinable mental impairments of major depressive disorder, recurrent, moderate, and anxiety do not cause more than minimal limitation in Plaintiff's ability to perform basic mental work activities and thus are nonsevere.   Tr. 17.

At step two of the sequential evaluation, the ALJ determines whether a claimant suffers from a "severe" impairment, *i.e.*, one that significantly limits his physical or mental ability to do basic work activities.   20 C.F.R. §§ 404.1520, 416.920(c).   At step two, a claimant must make a threshold showing that his medically determinable impairments significantly limit his ability to perform basic work activities.   See *Bowen*, 482 U.S. 137; 20 C.F.R. §§ 404.1520(c), 416.920(c).   "Basic work activities" refers to "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b).

To satisfy step two's requirement of a severe impairment, the claimant must prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and

laboratory findings; the claimant's own statement of symptoms alone will not suffice.  20 C.F.R. §§ 404.1508, 416.908.  The fact that a medically determinable condition exists does not automatically mean the symptoms are "severe," or "disabling" as defined by the Social Security regulations.  See, e.g., *Edlund*, 253 F.3d at 1159-60; *Fair v. Bowen*, 885 F.2d 597, 602-03 (9th Cir. 1989); *Key v. Heckler*, 754 F.2d 1545, 1549-50 (9th Cir. 1985).  In determining whether a claimant's impairments are severe at step two, the ALJ evaluates medical evidence and explains the weight given to the opinions of acceptable medical sources in the record.  SSR 85-28.

The ALJ rejected the DSHS psychological evaluations based on a lack of support in the record for the assessed limitations.  Tr. 18. The ALJ gave little weight to these opinions because they were based on cursory interviews, mental status examinations, and no clinical testing was conducted to confirm the diagnoses.  Tr. 18.

The record supports the ALJ's findings.  For example, on May 22, 2008, Travis Gunn, LCSW, saw Plaintiff and completed a Psychological/Psychiatric Evaluation form.  Tr. 392-98.  Mr. Gunn diagnosed anxiety disorder, NOS, and major depressive disorder, current, moderate.  Tr. 393.  On August 26, 2008, Leticia Chavez, MSW, MHP, saw Plaintiff and Psychological/Psychiatric Evaluation form, she diagnosed Plaintiff with alcohol abuse and depression, NOS.  Tr. 517.  Neither assessment form is accompanied by evidence of objective test results, and it appears no diagnostic tests were administered to Plaintiff during either evaluation.  The ALJ need not accept a medical opinion that is "brief, conclusory, and inadequately supported by clinical findings."  *Thomas v. Barnhart*,

278 F.3d 947, 957 (9th Cir. 2002).

Moreover, as the ALJ noted, alcohol abuse was suspected as a cause of some of the claimant's limitations. Tr. 18. The record reveals that Mr. Gunn noted that "alcohol abuse may worsen symptoms of client's depression." Tr. 394. Similarly, Ms. Chavez noted, "the use of alcohol might increase depression." Tr. 518. The Social Security Act bars payment of benefits when drug addiction and/or alcoholism is a contributing factor material to a disability claim. 42 U.S.C. §§ 423(d)(2)(C) and 1382(a)(3)(J); *Sousa v. Callahan*, 143 F. 3d 1240, 1245 (9th Cir. 1998). Because both evaluators questioned whether alcohol exacerbated Plaintiff's mental impairments, the ALJ properly gave little weight to these assessments.

Finally, Mr. Gunn noted Plaintiff was not taking "psychiatric medications. Client may benefit from an antidepressant medication." Tr. 394. A few months later, Ms. Chavez noted that Plaintiff was on medication, but it was "unclear" if the medication improved his symptoms. Tr. 518. "Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits." *Warre v. Comm'r of Social Sec. Admin.*, 439 F3d 1001, 1006 (9th Cir.2006), citing *Brown v. Barnhart*, 390 F3d 535, 540 (8th Cir.2004); 20 C.F.R. § 416.929(c)(3). In this case, it was unclear if Plaintiff's depression and anxiety could be effectively controlled with medications, and thus the ALJ's decision to give little weight to these evaluations was proper.

The ALJ's reasons for giving limited weight to Mr. Gunn and Ms. Chavez's assessments are supported by substantial evidence and were

based on a permissible determination within the ALJ's province.

**B.    Listings 2.02 and 11.02**

Plaintiff alleges that the ALJ erred by finding Plaintiff did not meet Listings 2.02 and 11.02.  At Step Three of the five-part sequential evaluation for determining whether a claimant is disabled, the ALJ determines whether a claimant's impairment or impairments meet or equal one of the specific impairments set forth in the Listings.  20 C.F.R. § 416.920(a)(4)(iii).  The physical and mental conditions contained in the Listings are considered so severe that "they are irrebuttably presumed disabling, without any specific finding as to the claimant's ability to perform his past relevant work or any other jobs."  *Lester v. Chater*, 81 F.3d 821, 828 (9th Cir. 1995).  If a claimant shows that his impairments meet or equal a Listing, he will be found presumptively disabled. 20 C.F.R. §§ 416.925-416.926.

For an impairment or combination of impairments to meet a Listing, all of the criteria of that Listing must be satisfied for the requisite durational period.  *Sullivan v. Zebley*, 493 U.S. 521, 530, 110 S. Ct. 885, 891, 107 L. Ed. 2d 967 (1990) (the impairment "must meet all of the specified medical criteria" in the Listing); see also 20 C.F.R. §§ 416.909 and 416.925(c)(3); Social Security Ruling ("SSR") 83-19.  At Step Three, the claimant bears the burden of proving an impairment or combination of impairments meets or equals the criteria of a Listing. *Tackett*, 180 F.3d at 1098-99. "An ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment." *Lewis v. Apfel,* 236 F.3d 503, 512 (9th Cir. 2001).

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 10

**1.   Listing 2.02**

Plaintiff alleges that the ALJ erred by finding he did not meet Listing 2.02 when evidence of two exams established his eyesight and the ALJ's proffered reasoning that the examination was not reliable was impermissibly vague.

Listing 2.02 provides in part:

> 2.02 Loss of visual acuity.  Remaining vision in the better eye after best correction is 20/200 or less.
> (ii) We will use the best-corrected visual acuity for distance in your better eye when we determine whether your loss of visual acuity satisfies the criteria in 2.02. The best-corrected visual acuity for distance is usually measured by determining what you can see from 20 feet. If your visual acuity is measured for a distance other than 20 feet, we will convert it to a 20-foot measurement. For example, if your visual acuity is measured at 10 feet and is reported as 10/40, we will convert this to 20/80.

20 C.F.R. Pt. 404, Subpt. P, App. 1, Part A §2.00(A)(4)(b)(ii).

The record reveals that Plaintiff was examined on two occasions by ophthalmologist Marvin G. Palmer, M.D.  Tr. 321-24; 401-04.  The first exam on July 20, 2007, measured Plaintiff's eyesight, with best possible correction, at 20/80 in both eyes.  Tr. 321.  Dr. Palmer noted that Plaintiff reported his visual acuity varies due to his blood sugar level.  Tr. 321.  Dr. Palmer's primary diagnosis was (1) myopic astigmatism, 2) presbyopia, 3) diabetes mellitus without retinopathy, and his secondary diagnosis was bilateral amblyopia secondary to congenital astigmatism.  Tr. 322.  His prognosis stated, "the visual acuity is stable with no change [expected] other than some variation with sugar level."  Tr. 322.

The second exam was conducted on August 1, 2008, and Plaintiff's vision with best possible correction was 20/200 in both eyes.  Tr. 401.  Dr. Palmer noted that Plaintiff reported his vision

had been progressively declining since his previous exam.  Tr. 401.
Dr. Palmer's diagnoses were consistent with the earlier exam, but
the prognosis changed to "appears to be unstable at this time and
may show some variation with his current treatment for his current
condition, such as, high blood pressure, diabetes, epilepsy." Tr.
402.  After the second exam, Dr. Palmer recommended, in part, a
"neuro opthalmology evaluation of the inconsistent responses." Tr.
402.

In determining if Plaintiff met the Listing, the ALJ gave
significant weight to two reviewing physician assessments, a
Physical Residual Capacity Assessment dated September 19, 2008,
completed by Norman Staley, M.D., Tr. 419-26, and a "Case Analysis"
completed on December 9, 2008, by Alfred Scottolini, M.D.  Tr. 469.
Dr. Staley commented on Dr. Palmer's exam, "[g]iven questions
regarding effort put forth at the 8/9/08 vision CE and the lack of
any MDI explaining the dramatic vision deterioration in such a short
period of time, there is currently insufficient evidence on which to
rate the claimant's physical limitations."  Tr. 426.[2]  The ALJ
concluded that Plaintiff did not meet Listing 2.02, and stated

_____

[2]Curiously, the ALJ asserts that this opinion was "affirmed on
reconsideration" and cites Exhibits 19F and 25F.  Tr. 19.  Exhibit
19F, however, is a *Psychiatric* Review Technique Form, that was
completed September 18, 2008, one day *prior* to Dr. Staley's
assessment, and completed by Edward Beaty, Ph.D.  Tr. 405-17.
Exhibit 19F is the December 9, 2008, Case Analysis single page
completed by Dr. Scottolini, that affirmed the RFC assessment.  Tr.
469.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT – 12

"[a]lthough the claimant did have a visual consultative examination indicating the claimant's better eye after best correction was 20/200, there is concern this examination is not reliable." Tr. 19.

However, the record does not support Dr. Staley's opinion, and thus the ALJ's conclusion. Nowhere does either medical record from Dr. Palmer indicate he questioned Plaintiff's effort during the exam. Instead, Dr. Palmer's exam notes from August 2008, recommend further evaluation to explain Plaintiff's "inconsistent responses." Tr. 402. The ALJ relied upon Dr. Staley's unsupported inference for rejecting the second exam under which Plaintiff met the Listing: "there is concern this examination is not reliable." Tr. 19. As a result, the ALJ found Plaintiff did not meet Listing 2.02. The ALJ is entitled to draw inferences that are logically flowing from the evidence. *Gallant,* 753 F.2d 1450. In this case, the inference that Plaintiff gave insufficient effort during his eye exam does not logically flow from the evidence. Instead, Dr. Palmer recommended Plaintiff undergo a neuro opthalmology evaluation to determine if a medically determinable impairment exists. Further development of the record on this issue is required to determine whether Plaintiff has the necessary medically determinable impairment to meet Listing 2.02. "'In Social Security cases, the ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered.'" *Smolen v. Chater*, 80 F.3d at 1288 (citation omitted). This duty exists regardless of whether the claimant is represented by counsel. *Celaya v. Halter*, 332 F.3d 1177, 1183 (9th Cir. 2003). The duty to develop the record is triggered when the record is inadequate. *Mayes v. Massanari*, 276

F.3d 453, 459-460 (9th Cir. 2001). The record in this case is inadequate to determine if Plaintiff meets Listing 2.02, and on remand, the ALJ should reassess the opinion of Dr. Palmer, and if necessary, obtain additional medical evidence related to Plaintiff's eyesight.

**2.   Listing 11.02**

Plaintiff also argues that he presented sufficient evidence to establish that he met the Listing for 11.02. ECF No. 17 at 13. The Listings regarding epilepsy provide in relevant part as follows:

11.00 Neurological

. . .

    11.02 Epilepsy—convulsive epilepsy, (grand mal or psychomotor), documented by detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once a month in spite of at least 3 months of prescribed treatment.

    A.   Daytime episodes (loss of consciousness and convulsive seizures) or

    B.   Nocturnal episodes manifesting residuals which interfere significantly with activity during the day.

20. C.F.R. Pt. 404, Subpt. P, App. 1, §§ 11.00-11.02.

The ALJ found Plaintiff's seizure disorder did not meet or equal the Listing for seizure disorders under Listing 11.02 because no evidence exists that Plaintiff's seizures occur more frequently than once a month, despite three months of prescribed treatment. Tr. 18. Later in the opinion, the ALJ noted the medical records reveal in 2007 and 2009 that Plaintiff's medication appeared to be working somewhat effectively, and the breakthrough seizures were likely attributable to Plaintiff's failure to comply with his

prescribed medication or to his substance abuse.  Tr. 21.  For example, on July 18, 2009, Plaintiff went to the emergency room asserting he had a seizure, and during that visit Plaintiff tested positive for cocaine.  Tr. 21; 551; 690.  On December 9, 2009, Plaintiff went to the hospital and reported he had a seizure, but he could not remember when he last took his medications and his diabetes mellitus was out of control.  Tr. 21; 689-95.

Despite Plaintiff's protests to the contrary, he has failed to establish that he met the Listing 11.02.  He did not establish the necessary frequency of his seizures aside from his own testimony, and he did not establish compliance with prescribed treatment.  In support of his argument that he meets the Listing, Plaintiff relies upon the October 26, 2008, one-page form completed by Donald Ankov, M.D., indicating Plaintiff should be approved for medicaid.  ECF No. 17 at 13-14; Tr. 539.  On that form, Dr. Ankov listed a summary of Plaintiff's physical impairments, and noted "in combination the client's education, work experience, and disabilities would likely equal Listing 11.02."  Tr. 539.  However, decisions by other governmental agencies as to whether someone is disabled are not binding on the Social Security Administration, but they do constitute evidence that must be considered.  20 C.F.R. §§ 404.1504, 416.904.

> We are required to evaluate all the evidence in the case record that may have a bearing on our determination or decision of disability, including decisions by other governmental and nongovernmental agencies.  Therefore, evidence of a disability decision by another governmental or nongovernmental agency cannot be ignored and must be considered.

SSR 06-03p.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 15

In this case, the ALJ gave little weight to Dr. Ankov's certification because the medical evidence at the hearing did not indicate Plaintiff's seizures equaled the listing "and Dr. Ankov does not refer to any seizure signs or symptoms that lead to his conclusion." Tr. 26. The ALJ properly weighed the evidence from Dr. Ankov, and properly determined Plaintiff did not establish he met Listing 11.02.

## C.   Step Four

Plaintiff alleges that the ALJ failed to include all of Plaintiff's limitations in his RFC, failed to make any findings related to mental demands of past work, and failed to properly credit the testimony of the Vocational Expert that indicated Plaintiff could not perform past relevant jobs because it required frequent reaching. ECF No. 17, at 17-19.

If the claimant's impairment does not meet or equal one of the listings, the ALJ proceeds to step four to determine the claimant's residual functional capacity, which is then used to decide whether the claimant's impairment "prevents [him] from performing work [he] has performed in the past." See 20 C.F.R. § 004.1520(e). At step four, the claimant bears the burden of showing that he does not have the residual functional capacity to engage in "past relevant work." 20 C.F.R. §§ 404.1520(e) & 416.920(e); *Tackett*, 180 F.3d at 1098. The SSA considers the claimant not disabled if he is able to perform his past work. *Id.* To determine a claimant's ability to perform past work, the ALJ requests information from the claimant about the work he or she has done in the past. 20 C.F.R. § 416.960(b)(2). The ALJ may then use the services of a vocational expert to

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 16

determine whether the claimant can do his or her past relevant work in light of his or her residual functional capacity. *Id.*

In this case, the ALJ found that based upon the vocational expert's testimony, an individual with Plaintiff's impairments and residual functional capacity could perform his past relevant work as a cleaner, industrial. Tr. 26. Initially, the ALJ posed a hypothetical based upon Plaintiff's limitations as assessed on August 22, 2007, by Norman Staley, M.D.[3] (Tr. 333-40) as follows:

> That would be lift up to 20 pounds at a time, frequently lift or carry 10 pounds; stand or walk for six hours in an eight-hour day; unlimited push/pull within the lifting restrictions; no climbing of ladders, ropes or scaffolds; only occasional climbing of ramps or stairs. That person could frequently balance and crouch and occasionally stoop, kneel, and crawl. Reaching and overhead would be limited to occasional with the right upper extremity, and that – in this case, that's the dominant extremity."

Tr. 773. The vocational expert testified that assuming Plaintiff's limitations, he could not perform his past relevant work because of his limited reaching with his dominant, right arm: "A cleaner/industrial has frequent reach and the vision is not a problem with that job, but it does require frequent reach." Tr. 774. In response, the ALJ responded,

> I guess I would note that the other doctors, later on, didn't find any limitations or sufficient evidence to include limitations. So, maybe I should, just to be thorough – assuming the same hypothetical as hypothetical number one, except in this case, we'll say that the reaching and reaching overhead is limited to frequent rather than constant. In that situation, would the

---

[3] "Now I'd like you to assume a person of Claimant's age, education and work experience who is able to work as follows: This goes back to the prior file at 13F, I think. It's Dr. Staley's light RFC." Tr. 773.

Claimant be able to perform any of his past relevant work? Tr. 775. The VE responded that if Plaintiff's reaching limitations were changed to frequent reaching, Plaintiff could perform his past relevant work, as well as fast food worker, cannery worker, and cafeteria attendant. Tr. 775-76.

The ALJ did not specify the "other doctors, later on" upon which he relied in changing Plaintiff's limitations related to reaching. The Defendant asserted that the ALJ's RFC was supported by "Dr. Ho and the objective medical evidence," but similarly failed to specify the medical records that supported a frequent, instead of occasional, reaching limitation. ECF No. 19, at 18.

Throughout the record, the medical evidence reveals multiple instances when Plaintiff's right shoulder functioning was assessed as impaired. For example, Dr. Dubek's August 14, 2007, evaluation opined Plaintiff was severely limited in range of motion in his right shoulder, and his overall work level was "severely limited." Tr. 506. On August 22, 2007, Dr. Staley stated Plaintiff was limited in reaching all directions, and he noted Dr. Ho's assessment that Plaintiff suffered from right shoulder pain after dislocating it in 2006, and his right shoulder showed evidence of calcific tendinitis. Tr. 336; 340.

A February 7, 2008, assessment from Dr. Dubek indicated Plaintiff had no use of his right arm. Tr. 510. On July 31, 2008, Dr. Dubek noted Plaintiff's shoulders/upper extremities were not within normal limits, and Plaintiff had pain as well as restricted range of movement. Tr. 513-14. In November, 2008, Plaintiff visited Thomas Kennedy, M.D., an orthopedist, complaining of right

shoulder pain.  Tr. 580-81.  Dr. Kennedy noted that x-rays revealed "maintained glenohumeral and acromiohumeral joint space with possible small area of mild calcific tendinitis.  There is significant AC joint arthritic changes noted an a type III-C acromion." Tr. 581.  On December 9, 2008, Alfred Scottolini, M.D., reviewed Plaintiff's records, but omitted mention of Plaintiff's shoulder impairment in his cursory "Case Analysis." Tr. 469.  Dr. Scottolini concluded "[t]he initial determination remains substantively and technically correct: No MDI." Tr. 469.  Two days later, Plaintiff returned to Dr. Kennedy, who reviewed Plaintiff's MRI results of Plaintiff's shoulder and concluded that he suffered from "subacromial impingement syndrome and probable chronic full thickness rotator cuff tear.  There is a type III-C acromion and significant AC joint arthritic changes noted." Tr. 579.

On January 15, 2009, Plaintiff returned to Dr. Kennedy, who determined based upon Plaintiff's condition, it was necessary to proceed with "right shoulder arthroscopy, debridement, and gentle manipulation under anesthesia if indicated at that time." Tr. 578.

Given the substantial medical evidence that Plaintiff's shoulder injury continued to be an impairment and required surgery, the ALJ's conclusion that Plaintiff can "frequently reach in all directions, including overhead, with the right dominant upper extremity" is not supported by the record.  Tr. 19.  The ALJ erred by finding Plaintiff could perform his past work.  The choice of whether to reverse and remand for further administrative proceedings, or to reverse and simply award benefits, is within the discretion of the Court.  *McAllister v. Sullivan*, 888 F.2d 599, 603

(9th Cir. 1989).  Remand is appropriate where additional proceedings would remedy defects in the ALJ's decision, and where the record should be developed more fully.  *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990).  Here, the court finds remand appropriate.  The ALJ failed to pose a complete hypothetical to the vocational expert in accordance with the medical evidence.  On remand, the ALJ must present a hypothetical to the vocational expert which includes all of his findings, supported by substantial medical evidence, regarding Plaintiff's functional limitations.

**D.   Step Five**

Plaintiff complains the vocational expert testimony that the ALJ relied upon was without evidentiary value because it was based upon an incomplete hypothetical.  ECF No. 17 at 19.  For the vocational expert's testimony to constitute substantial evidence, the ALJ must present the vocational expert with a hypothetical based on medical assumptions supported by substantial evidence in the record that reflects each of the claimant's limitations.  *Andrews*, 53 F.3d at 1044.  The hypothetical should be "accurate, detailed and supported by the medical record."  *Tackett*, 180 F.3d at 1101.  Where a hypothetical fails to reflect each of the claimant's limitations that are supported by substantial evidence, the vocational expert's answer has no evidentiary value.  *Gallant v. Heckler,* 753 F.2d 1450, 1456 (9th Cir. 1984) ("[b]ecause neither the hypothetical nor the answer properly set forth all of [claimant's] impairments, the vocational expert's testimony cannot constitute substantial evidence to support the ALJ's findings.").

Here, the ALJ relied on the testimony of the vocational expert

in response to two hypothetical questions.  The expert's response to the first hypothetical that included an "occasional" reaching limitation, was Plaintiff was precluded from all past relevant work, as well as competitive full-time employment.  Tr. 774-75.  After the ALJ changed Plaintiff's reaching limitation to "frequent," the vocational expert gave a new opinion that Plaintiff could perform his past work as a cleaner, industrial.  Tr. 775-76.  As analyzed above, the ALJ's RFC determination related to Plaintiff's reaching limitations was not supported by substantial evidence.  As a result, the vocational expert's testimony related to Plaintiff's ability to perform work with a "frequent" reaching limitation, was without evidentiary value.

**E.   Martin Dubek, M.D.**

Plaintiff alleges that the two reasons the ALJ offered for rejecting Dr. Dubek's opinion were not valid.  ECF No. 17 at 15.  In weighing medical source opinions in Social Security cases, the Ninth Circuit distinguishes among three types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither treat nor examine the claimant.  *Lester*, 81 F.3d at 830.  Generally, more weight should be given to the opinion of a treating physician than to the opinions of non-treating physicians.  *Id.*  A treating physician's opinion is afforded great weight because such physicians are "employed to cure and [have] a greater opportunity to observe and know the patient as an individual."  *Sprague*, 812 F.2d at 1230.  Where a treating physician's opinion is not contradicted by another physician, it may

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 21

be rejected only for "clear and convincing" reasons, and where it is contradicted, it may not be rejected without "specific and legitimate reasons" supported by substantial evidence in the record. *Lester*, 81 F.3d at 830. Moreover, the Commissioner must give weight to the treating physician's subjective judgments in addition to his clinical findings and interpretation of test results. *Id.* at 832-33.

Further, an examining physician's opinion generally must be given greater weight than that of a non-examining physician. *Id.* at 830. As with a treating physician, there must be clear and convincing reasons for rejecting the uncontradicted opinion of an examining physician, and specific and legitimate reasons, supported by substantial evidence in the record, for rejecting an examining physician's contradicted opinion. *Id.* at 830-31.

The opinion of a non-examining physician is not itself substantial evidence that justifies the rejection of the opinion of either a treating physician or an examining physician. *Id*. at 831. "The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record." *Thomas*, 278 F.3d at 957. Factors that an ALJ may consider when evaluating any medical opinion include "the amount of relevant evidence that supports the opinion and the quality of the explanation provided; the consistency of the medical opinion with the record as a whole; [and] the specialty of the physician providing the opinion." *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). Where a conflict exists between the opinion of a treating

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 22

physician and an examining physician, the ALJ may not reject the opinion of the treating physician without setting forth specific, legitimate reasons supported by substantial evidence in the record. *Id.* at 632.

The ALJ indicated that he discounted Dr. Dubek's opinions on the DSHS forms because the record contained no treatment notes from Dr. Dubek's office to support his opinions, examining physician Marie Ho, M.D., contradicted Dr. Dubek's assessments, and because several of Dr. Dubek's DSHS forms predated the amended alleged onset date.  Tr. 25.

When a treating physician and an examining physician reach contradictory conclusions, the ALJ may reject the opinion of the treating physician with specific, legitimate reasons supported by substantial evidence in the record.  *Orn*, 495 F.3d at 631. Additionally, the "ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas,* 278 F.3d at 957.  In this case, the record reveals scant treatment notes from Dr. Dubek, and thus this reason is "specific and legitimate" and, therefore, a proper basis upon which to give less weight to Dr. Dubek's DSHS assessments.

However, the ALJ also stated he gave little weight to Dr. Dubek's assessments prepared in 2003, 2005, and in 2006 because these assessments were prepared well before the amended alleged date of onset, and the opinions were not supported by substantial evidence.  Tr. 25.  Medical records that predate the onset date can be relevant, particularly in the case of progressive impairments.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 23

See SSR 83-20.    In this case, a significant amount of medical evidence predates March 4, 2008, Plaintiff's alleged onset date, and much of it is probative to the analysis of Plaintiff's case.    For example, these records reveal Plaintiff's failure to comply with his prescribed medication regime, his use of alcohol and cocaine, along with x-rays and imaging reports.    Tr. 198; 221-24; 242; 246; 253; 273; 286; 290-93; 296-97.    As a result, the ALJ's conclusion that Dr. Dubek's assessments were entitled to little weight, in part, because they predated the date of onset is not a legitimate and specific reason to discount Dr. Dubek's assessments.    On remand, the ALJ should reassess Plaintiff's medical records that predate his onset date and determine the appropriate weight to be afforded to those records.

**F.    Credibility**

Plaintiff asserts the ALJ failed to provide "clear and convincing" reasons for rejecting his complaints, and he failed to specify both the testimony that was not credible and the evidence that undermined the testimony.    ECF NO. 17, at 17.

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. *Andrews*, 53 F.3d at 1039.    The ALJ's findings, however, must be supported by specific, cogent reasons. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990).    Once the claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991).    Unless

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 24

affirmative evidence exists that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be "clear and convincing." *Lester*, 81 F.3d at 834. "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834.

Contrary to Plaintiff's assertions, the ALJ provided multiple clear and convincing reasons supported by the record, for Plaintiff's negative credibility finding. For example, the ALJ noted that records from 2007 indicated Plaintiff's seizures were better controlled with his newest medication. Tr. 21. As noted *supra*, an impairment that can be controlled effectively with medication is not disabling for the purpose of determining eligibility for SSI benefits. *Warre*, 439 F.3d at 1006. Also, while Plaintiff reported breakthrough seizures, the record revealed the breakthrough seizures may be related to poor compliance with medications, or Plaintiff's substance abuse. Tr. 21. On February 7, 2008, Plaintiff admitted to Dr. Dubek that he had "spotty compliance" with taking his medications. Tr. 21; 387. An unexplained, or inadequately explained, failure to follow a prescribed course of treatment can cast doubt on the sincerity of the claimant's pain testimony. *Fair*, 885 F.2d at 603. Therefore, noncompliance with a prescribed course of treatment is a clear and convincing reason for finding a Plaintiff's subjective complaints lack credibility. *Id.*; see also *Bunnell*, 947 F.2d at 346.

Also, as the ALJ noted, on July 18, 2009, Plaintiff presented at the hospital, asserting he had suffered a seizure, and he tested

positive for cocaine.   Tr. 21; 552.   The ALJ also noted at Plaintiff's December 19, 2009, visit to the hospital, when Plaintiff stated he had a seizure the prior evening, staff noted recent alcohol and/or drug use was possible, and Plaintiff's diabetes mellitus was out of control and he could not recall when he took his last dose of medicine.   Tr. 21; 690.

Finally, the ALJ noted reviewing physician Edward Beaty, Ph.D., stated in a September 18, 2008, assessment that Plaintiff's medication doses are below therapeutic doses, and Plaintiff's mother had never witnessed a seizure.   Tr. 22.   The ALJ also noted that Dr. Beaty opined that these facts raised credibility issues.   Tr. 22. However, as noted above, the record does not fully support Dr. Beaty's conclusions.   Specifically related to this issue, the record is inconclusive about whether Plaintiff's mother witnessed his seizures.   In a letter dated April 23, 2007, Dr. Dubek describes Plaintiff's seizures, and states, "I don't have any independent witnesses concerning this."[4]   Tr. 299.   The record does not contain a third party statement from Plaintiff's mother, and Plaintiff's

---

[4]The Listing for Epilepsy requires "At least one detailed description of a typical seizure . . . The reporting physician should indicate the extent to which description of seizures reflects his own observations and the source of ancillary information. Testimony of persons other than the claimant is essential for description of type and frequency of seizures if professional observation is not available."   20. C.F.R. Pt. 404, Subpt. P, App. 1, §§ 11.00.

mother lives nearby, but not in the same house with Plaintiff. Additionally, Plaintiff indicated throughout the record that many of his seizures occur while his is sleeping. As a result, it is unclear if Plaintiff's mother has witnessed a seizure. This was not a valid reason to rely upon in finding Plaintiff less than credible. An ALJ's error is harmless where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record. See *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008); *Batson*, 359 F.3d at 1195-97. Because substantial evidence supporting the ALJ's credibility decision remains, and because the error "does not negate the validity of the ALJ's ultimate conclusion," it is harmless. *Batson*, 359 F.3d at 1197; see also *Carmickle*, 533 F.3d at 1162.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the court concludes the ALJ's decision is not supported by substantial evidence and is based on legal error. The matter is remanded for reconsideration of whether Plaintiff meets Listing 2.02, and for reconsideration of Plaintiff's RFC. The ALJ must present a hypothetical to the vocational expert which includes all of his findings, supported by substantial medical evidence, regarding Plaintiff's functional limitations. Additionally, the ALJ shall reevaluate the opinions of the medical source opinions, explain the weight given to acceptable medical sources, and, if necessary, provide legally sufficient reasons for rejecting acceptable medical source opinions. Also, if necessary, the ALJ will take medical

expert testimony and vocational expert testimony at a new hearing. The decision is therefore **REVERSED** and the case is **REMANDED** for further proceedings consistent with this opinion.  Accordingly,

**IT IS ORDERED:**

1.  Plaintiff's Motion for Summary Judgment **(ECF No. 16)** is **GRANTED** and the matter is **REMANDED** to the Commissioner for additional proceedings.

2.  Defendant's Motion for Summary Judgment **(ECF No. 18)** is **DENIED.**

3.  An application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. Judgment shall be entered for Plaintiff, and the file shall be **CLOSED.**

DATED February 8, 2013.


_____S/ CYNTHIA IMBROGNO_____
UNITED STATES MAGISTRATE JUDGE

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 28